UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61520-Civ-SEITZ
MAGISTRATE JUDGE P. A. WHITE

BRUCE THOMPSON,                    :

     Petitioner,             :

                                    *CORRECTED
v.                                 :    REPORT OF
                                 MAGISTRATE JUDGE

WALTER A. McNEIL,                  :

     Respondent.             :
_____

    ***On July 24, 2009, a Report was entered by the undersigned, recommending disposition of this habeas petition filed pursuant 28 U.S.C. §2254 for the identical reasons stated herein. Due to inadvertent clerical error, the Report was mailed to the wrong petitioner. This Report is now being entered in its place in order to restart the period for filing of objections.***

Introduction

    Bruce Thompson has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging the constitutionality of his convictions for burglary of a structure while armed and grand theft entered following a jury verdict in Broward County Circuit Court, case no. 99-2065CF10A.

    This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

    For its consideration of this petition (DE#1) and supplements thereto (DE#s17-18)[1], supporting memorandum (DE#19), as well as,

_____

[1]DE#18 appears to be a duplicate of DE#17.

the petitioner's expansions thereto (DE#s25,27)[2] with supporting exhibits, the Court has the responses of the state to an order to show cause with multiple exhibits (DE#s10-11,20), and the petitioner's reply (DE#10).

The petitioner raises the following claims:

1.  His Fourth Amendment rights were violated by the trial court who denied his motion to suppress evidence obtained as a result of an unlawful search and seizure. (DE#1:5).

2.  His Fourth Amendment rights were violated when the trial court denied his motion to suppress physical evidence obtained as a result of an unlawful stop and subsequent search. (DE#1:5).

3.  His due process right to a fair trial was compromised and the trial court erred in failing to grant a mistrial based on the unlawful comment made by a prosecution witness. (DE#1:6).

4.  The court violated his constitutional rights when it allowed a police officer to identify the clothing seen on a surveillance video as that belonging to the petitioner. (DE#1:6).

5.  He was denied effective assistance of counsel, where his lawyer, who was diagnosed with a bipolar disorder and undergoing medical care and treatment at the time of the petitioner's trial, failed to properly pursue an voluntary intoxication defense at trial. (DE#1:14).

6.  He was denied effective assistance of counsel, where his lawyer permitted the petitioner to appear in shackles during

_____

[2]DE#27 appears to be a duplicate of DE#25.

trial and recess, which was observed by three jurors. (DE#1:16).

7.    He was denied effective assistance of counsel, where his lawyer failed to object or seek to exclude highly prejudicial statements and evidence. (DE#18:4).

8.    He was denied effective assistance of counsel, where his lawyer allowed the petitioner to make prejudicial statements regarding his custody status during the trial and by permitting the jury to view him in shackles. (DE#18:5).

<u>Procedural History</u>

The procedural history of the underlying state court convictions reveals as follows. The petitioner was charged by Information with the January 12, 1999 burglary of a structure while armed (Count 1) and grand theft (Count 2). (DE#11:Ex.2). Prior to trial, he filed a motion to suppress statements and physical evidence. (DE#11:Ex.3). After an evidentiary hearing, the trial court denied the motions. (DE#11:Ex.4). Thereafter, the petitioner proceeded to trial where he was convicted as charged following a jury verdict. (DE#11:Exs.4-6). The petitioner filed a motion for new trial and amendment thereto. (DE#11:Ex.7-8). After an evidentiary hearing was held, the trial court denied the motion. (DE#11:Ex.9). The petitioner was thereafter adjudicated guilty and sentenced as a habitual offender and a prison releasee reoffender to a term of 25 years in prison as to Count 1, and a concurrent 10 years in prison as to Count 2. (DE#11:Ex.1). The movant filed a motion to correct illegal sentence which was granted, and the judgment amended to reflect vacatur of the prison releasee reoffender adjudication. (DE#11:Ex.11). The court then adjudicated the petitioner a habitual felony offender, imposed a 25 year term of imprisonment as to Count 1, and a concurrent 10 year term of

imprisonment as to Count 2. (<u>Id</u>.).

Meanwhile, the petitioner appealed, raising the same claims as claims one through four of this federal petition, as listed above. (DE#11:Ex.12). On July 18, 2001, the Fourth District Court of Appeal *per curiam* affirmed the petitioner's conviction without published opinion. <u>Thompson v. State</u>, 795 So.2d 74 (Fla. 4 DCA 2001)(table); (DE#11:Ex.15). The petitioner's motion for rehearing and for reconsideration were denied on August 30, 2001. (DE#11:Ex.17). Discretionary review was dismissed by the Florida Supreme Court for lack of jurisdiction. <u>Thompson v. State</u>, 799 So.2d 220 (Fla. 2001); (DE#11:Ex.20). Petition for certiorari review was denied by the U.S. Supreme Court on March 25, 2002. (DE#11:Ex.22). Rehearing was denied on June 24, 2002. (DE#11:24). Thus, the judgment of conviction became final, for purposes of the AEDPA's one year statute of limitations, at the latest on June 24, 2002, when certiorari review was finally denied by the U.S. Supreme Court.[3]

The federal limitations period ran unchecked for a little over one month, from June 24, 2002 until August 7, 2002, when the petitioner returned to the state appellate court, filing a state petition for writ of habeas corpus, raising one claim of ineffective assistance of appellate counsel, for failing to argue that the trial court erred in sentencing petitioner as a habitual felony offender without requiring the prosecution to authenticate the fingerprint card comparison evidence prior to their admissibility as predicate convictions. (DE#11:Ex.25). The petition

---

[3]For federal purposes, a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>accord</u>, <u>Bond v. Moore</u>, 309 F.3d 770 (11 Cir. 2002); <u>Coates v. Byrd</u>, 211 F.3d 1225 (11 Cir. 2000). Ordinarily, a petition for writ of certiorari must be filed within 90 days of the date of the entry of judgment, rather than the issuance of a mandate.  Supreme Court Rule 13.

was thereafter denied. (DE#11:Ex.26). The movant then filed an amended habeas petition,[4] as well as, a motion for rehearing/consideration, which were denied by the appellate court on September 27, 2002. (DE#11:Ex.29).

Thereafter, it appears the petitioner engaged in lengthy, protracted state litigation not relevant to this federal habeas proceeding until the petitioner returned to the state court filing his first Rule 3.850 motion for postconviction relief on February 20, 2003 raising multiple claims, including claims 3, 4, and 6 of this federal petition, as listed above. (DE#11:Exs.57). Numerous *pro se* supplements and amendments were filed thereafter. (DE#11:Exs.43,58-59).

Counsel was then appointed and on January 13, 2004, a new Rule 3.850 motion filed, raising two claims, to-wit: (1) that counsel was ineffective for failing to investigate that counsel's secretary made negative remarks about the petitioner in the jury's presence; and (2) that counsel was ineffective for failing to properly investigate and present a voluntary intoxication defense. (DE#11:Ex.43,60,61,67). Following evidentiary hearings, on July 27, 2005, the trial court entered an order denying the motion. (DE#11:Exs.43,61,67).

On May 2, 2006, the petitioner next filed a second Rule 3.850 motion, challenging the constitutionality of his sentence in light of the then recent Supreme Court decision in <u>Blakely v. Washington</u>, 524 U.S. 296 (2004). (DE#11:Ex.41). The trial court entered an order on July 24, 2006 denying the motion based on the state's response. (DE#11:Ex.43).

---

[4]The amended petition was treated by the appellate court as a rehearing motion. (DE#11:Ex.29).

It appears that petitioner's counsel appealed the denial of both Rule 3.850 motions, filing an Anders[5] brief and motion to withdraw asserting that there were no nonfrivolous grounds for an appeal. (DE#11:Ex.68). Thereafter, petitioner filed a *pro se* brief on appeal, and on March 19, 2008, the appellate court *per curiam* affirmed the court's denials of the postconviction motions in an unpublished opinion. Thompson v. State, 980 So.2d 512 (Fla. 4 DCA 2008); (DE#11:Ex.72). The petitioner's motions for clarification and written opinion were denied, with the mandate issuing on June 6, 2008. (DE#11:Exs.75-76).

In the interim, while the above proceeding was still pending, the petitioner filed a petition for habeas corpus and request for belated appeal with the appellate court. (DE#11:Ex.77). The petition and request were denied as untimely and successive on August 6, 2008. (DE#11:Ex.78).

The petitioner then came to this court timely filing this federal habeas corpus petition on September 18, 2008.[6] (DE#1). Petitioner filed his timely petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); Penry v. Johnson, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). The respondent concedes correctly that this petition was filed within the one-year limitations period of 28 U.S.C. §2244, as amended by the Antiterrorism and Effective Death Penalty

---

[5]Anders v. California, 386 U.S. 738 (1967).

[6]See: Adams v. United States, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

Act of 1996, <u>Artuz  v. Bennett</u>, 531 U.S. 4 (2000) (pendency of properly-filed state postconviction proceedings tolls the AEDPA limitations period).

It is axiomatic that issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted prior to their consideration on the merits. <u>Anderson v. Harless</u>, 459 U.S. 4 (1982); <u>Hutchins v. Wainwright</u>, 715 F.2d 512 (11 Cir. 1983). Exhaustion requires that a claim be pursued in the state courts through the appellate process. <u>Leonard v. Wainwright</u>, 601 F.2d 807 (5 Cir. 1979). Both the factual substance of a claim and the federal constitutional issue itself must have been expressly presented to the state courts to achieve exhaustion for purposes of federal habeas corpus review. <u>Baldwin v. Reese</u>, 541 U.S. 27 (2004); <u>Gray v. Netherlands</u>, 518 U.S. 152 (1996); <u>Duncan v. Henry</u>, 513 U.S. 364 (1995); <u>Picard v. Connor</u>, 404 U.S. 270 (1971). These principles will be discussed when relevant in connection with the petitioner's individual claims *infra*.

## Facts Adduced At Trial

For an appreciation of the issues involved in this proceeding, a full review of the facts adduced at trial is essential. Officer Thomas Schenck testified that on January 12, 1999, he was on routine patrol when he noticed that a glass front door of a Kwik Stop convenience store had been shattered, and therefore, requested additional back-up units because of a possible burglary. (T.307-09). He also observed coins and the store's cash register la2ying on the floor. (T.310). According to the store owner, Abdul Eldick, approximately $200.00 in the register, $180.00 in rolled coins, and a .357 Smith and Wesson firearm were taken. (T.316-319). At that time, Eldick retrieved a videotape from the store's surveillance camera, and gave it to police which revealed someone smashing the

7

window and entering the store. (T.310-311,316-320).

In the meantime, Ft. Lauderdale Police Officer Todd Hill and Officer Tim Shields were on routine patrol in a marked patrol unit when they responded[7] to an area where crack cocaine was readily available, to-wit a Four Corners Convenience Store. (T.348,357-59,364).[8] Officers had a brief meeting with the store clerk, Mario, who directed them towards the petitioner. (T.339,357). The officers then drove towards the petitioner, shining the unit's spotlights on him, drawing their weapons, and ordering the petitioner to the ground. (T.341,359,,369). The officers observed and seized a firearm protruding from the petitioner's rear waistband. (T.341,343,359). A pat down search further yielded $90.00 in approximately four rolls of quarters and pennies, and a blue bandana. (T.342,344,346,348,362). At the time of the petitioner's arrest, he was wearing a sweatshirt and denim vest, and appeared jittery, nervous, and had glassy eyes, all signs of drug use. (T.345-352,363,365). Sometime thereafter, Officer Hill viewed the videotape from the Kwik Stop, and recognized the clothing worn by the perpetrator as the same clothing worn by the petitioner. (T.320,345-46). Wilton Manors Police Detective, Daniel James, assembled a gun line-up from which Eldick was able to identify the firearm taken from his store. (T.379,324-326).

The petitioner presented a voluntary intoxication defense at trial. Defense witness, Gail Levit, testified that while the petitioner lived with her, he drank alcohol and smoked crack cocaine daily, becoming incoherent and disoriented. (T.405-06). The petitioner also testified on his own behalf at trial. (T.413). He

---

[7]It appears from the record that the officers were responded to a "BOLO" (Be on the Look Out) arising from a call from Mario, a convenience store clerk, who had observed a man carrying a firearm.

[8]The transcripts are attached to the Appendix as Exhibit Ex.4.

explained his history of drug and alcohol abuse, and his treatment for bipolar disorder. (T.413-424). According to the petitioner, he suffered from "blackouts," and on the night of the incident, he claims to have suffered from one such episode. (T.421-424). He recalled that during the evening hours of January 11, 1999, he purchased three hits of blotter acid which made him ill. (T.431,435). He admitted that he was depicted on the surveillance videotape of the store that was robbed. (T.435). The petitioner explained that he had a bandana covering his face because he probably went to the store to steal cigarettes that he could not buy earlier and to get money. (T.443). He claims, however, that he did not really know what he was doing, and the fact that he was moving slowly and hit his head as he was jumping over the counter, shows that he was drunk at that time. (T.443).

<u>Discussion of the Claims</u>

Turning to the merits of the claims raised in the collateral proceeding, Section 104(d) of the AEDPA [28 U.S.C. §2254(d)] sets out a significant new restriction upon the ability of federal courts to grant habeas corpus relief. Under the AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.' <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11th Cir. 2002)." <u>See</u> <u>Stewart v. Sec. Dept. of Corrections</u>, 476 F.3d 1193, 1208 (11th Cir. 2007). <u>See also</u> <u>Parker v. Sec.Dept.of Corrections</u>, 331 F.3d 764 (11th Cir. 2003). The AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002). It is undisputed that the AEDPA applies in the instant case.

Where a petitioner's claim(s) raises a federal question,[9] that was exhausted, is not procedurally barred, and was adjudicated on the merits in the state courts, the federal court must afford a high level of deference to the state court's decision. See e.g., Ferguson v. Culliver, 527 F.3d 1144, 1146 (11 Cir. 2008).

Pursuant to 28 U.S.C. §2254(d), habeas relief is available only in cases where the claims were adjudicated on the merits and the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in state court." Crowe v. Hall, 490 F.3d 840, 844 (11th Cir. 2007), cert. den'd, ___ U.S. ___, 128 S.Ct. 2053 (2008); Williams v. Taylor, 529 U.S. 362 (1999). Clearly established federal law embraces "the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision." Stewart v. Sec'y, Dep't of Corrs., 476 F.3d 1193, 1208 (11th Cir. 2007). Further, a decision is "contrary to" established law if (1) the state court arrived at an opposite conclusion on a question of law as interpreted by the Supreme Court or (2) the court arrived at a different result when confronted with "materially indistinguishable" facts from relevant Supreme Court precedent. Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007), cert. den'd, ___ U.S. ___, 122 S.Ct. 846 (2008). An application of established law is unreasonable "if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context." Id.

"[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite

---

[9]See 28 U.S.C. §2254(a)("a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States").

[Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(quoting Early v. Packer, 537 U.S. 3, 7-8 (2002). Even where a state court denies an application for post-conviction relief without written opinion, that decision constitutes an "adjudication on the merits," and is thus entitled to the same deference as if the state court had entered written findings to support its decision. See Wright v. Sec. of Dep't of Corr., 278 F.3d 1245, 1255 (11 Cir. 2002). Moreover, findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence. See 28 U.S.C. §2254(e)(1); Crowe v. Hall, 490 F.3d at 844.

Regarding his ineffective assistance of counsel claims, those claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard to the movant. See Massaro v. United States, 538 U.S. 500, 505 (2003). To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result.[10] Strickland v. Washington, 466 U.S. 668 (1984). Moreover,

_____

[10]When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Chandler v. United States, 218 F.3d 1305 (11 Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11 Cir.), cert. denied, 537 U.S. 812 (2002), quoting, Strickland v. Washington, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. Strickland, 466 U.S. at 698.

a habeas court's review of a claim under the Strickland standard is "doubly deferential." <u>Knowles v. Mirzayance</u>, ____ U.S. ____, 129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009). The relevant question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." <u>Id</u>. (citations omitted). Finally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Id</u>.

The two-prong <u>Strickland</u> test is equally applicable in assessing counsel's performance in appellate proceedings. <u>See</u> <u>Grubbs v. Singletary</u>, 120 F.3d 1174, 1176 (11 Cir. 1997)(applying the <u>Strickland</u> test to a claim of ineffective assistance of appellate counsel). <u>See also</u> <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11 Cir. 1987). The Sixth Amendment does not require appellate attorneys to press every non-frivolous issue that the client requests to be raised on appeal, provided that counsel uses professional judgment in deciding not to raise those issues. <u>Jones v. Barnes</u>, 463 U.S. 745 (1983). In considering the reasonableness of an attorney's decision not to raise a particular claim, this Court must consider "all the circumstances, applying a heavy measure of deference to counsel's judgments." <u>Eagle v. Linahan</u>, 279 F.3d 926, 940 (11th Cir. 2001), <u>quoting</u>, <u>Strickland</u>, 466 U.S. at 691. Further, in determining whether the failure to raise a claim on appeal resulted in prejudice, the courts must review the merits of the omitted claim and, if it is concluded that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal. <u>Eagle</u>, 279 F.3d at 943.

The Eleventh Circuit reviews an attorney's performance with

deference, and looks not for "what is prudent or appropriate, but only what is constitutionally compelled." <u>Hardwick v. Crosby</u>, 320 F.3d 1127, 1161 (11 Cir. 2003), <u>citing Chandler v. United States</u>, 218 F.3d 1305, 1313 (11 Cir. 2000) (en banc)(When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within the wide range of professionally competent assistance." <u>Van Poyck v. Florida Dept. of Corrections</u>, 290 F.3d 1318, 1322 (11 Cir.), <u>cert. den'd</u>,___ U.S. ___, 123 S.Ct. 70 (2002), <u>quoting</u>, <u>Strickland v. Washington</u>, <u>supra</u> at 690. Review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11th Cir. 1992).


### Fourth Amendment Claims


In claims one and two, the petitioner asserts that his Fourth Amendment rights were violated. It is well settled that a federal court may not grant habeas relief based on a Fourth Amendment violation where the state has provided an opportunity for full and fair litigation of the Fourth Amendment claim. <u>Stone v. Powell</u>, 428 U.S. 465 (1976). <u>See also</u> <u>Cardwell v. Taylor</u>, 461 U.S. 571 (1983); <u>Devier v. Zant</u>, 3 F.3d 1445, 1455 (11 Cir. 1993); <u>Harris v. Dugger</u>, 874 F.2d 756, 761 (11 Cir.), <u>cert. denied</u>, 493 U.S. 1011 (1989); <u>Ponce v. Cupp</u>, 735 F.2d 333, 335 (9 Cir. 1984); <u>Swicegood</u>

<u>v. Alabama</u>, 577 F.2d 1322, 1324-25 (5 Cir. 1978). This rule applies to all claims arising under the Fourth Amendment. <u>See, e.g.</u>, <u>Williams v. Collins</u>, 16 F.3d 626, 637 (5 Cir.), <u>cert</u>. <u>denied</u>, 512 U.S. 1289 (1994)(search and seizure); <u>Cardwell v. Taylor</u>, 461 U.S. at 572 (arrest). The doctrine established in <u>Stone v. Powell</u>, <u>supra</u> has survived the passage of the AEDPA. <u>See Bradley v. Nagle</u>, 212 F.3d 559, 564-66 (11 Cir. 2000)("The Supreme Court ... has held that federal courts are precluded from conducting post-conviction review of Fourth Amendment claims where state courts have provided 'an opportunity for full and fair litigation' of those claims."), <u>cert</u>. <u>denied</u>, 531 U.S. 1128 (2001).

The above-reviewed record reveals that while representing the petitioner, trial counsel filed a written Motion to Suppress Statements (DE#11:Ex.3) and a Motion to Suppress Physical Evidence (T.250), seeking the suppression of various identified tangible items of property and evidence seized as the result of an exploratory search. (T.250). The petitioner asserted that suppression was warranted, because the evidence was illegally seized in that there was no probable cause to justify the stop and resultant search. <u>Id</u>. Evidentiary proceedings were conducted before the trial court where testimony was taken and argument made before the motion was denied. (DE#11:Ex.3). The issue was raised again before the state appellate court on direct appeal, and the claim was rejected. <u>See</u> <u>Thompson v. State</u>, 795 So.2d 74 (Fla. 4 DCA 2001)(table); (DE#11:Ex.15).

Thus, the Fourth Amendment claim was fully litigated in the state courts and the petitioner had an opportunity for full and fair litigation of any related claim which was not so raised.[11] The

---

[11]The Eleventh Circuit has "construed <u>Stone v. Powell</u> to bar consideration of a Fourth Amendment claim if the state has provided an opportunity for full and fair litigation of the claim 'whether or not the defendant employs those processes.'" <u>Huynh v. King</u>, 95 F.3d 1052, 1058 (11 Cir. 1996) (<u>citing</u> <u>Caver v.</u>

petitioner has not alleged, let alone demonstrated, that the state court proceeding was inadequate and, from review of the record, this Court is satisfied that the petitioner had a full and fair opportunity to litigate all his Fourth Amendment claims in the Florida courts. After hearing argument from counsel, the trial court denied the motion, finding that reasonable suspicion that a crime had or was about to occur was present and that the detention was a valid Terry-stop[12] based on upon information supplied by a citizen informant. (T.283-284). Thus, the petitioner's Fourth Amendment claims are, therefore, precluded from federal habeas corpus review. See Bradley v. Nagle, 212 F.3d at 565 (Stating that "[w]e cannot now say that [petitioner] was denied a full and fair opportunity to litigate his Fourth Amendment claims, even were we to disagree with the state courts' analysis or conclusion. To do so would vitiate the Supreme Court's decision in Stone, which we are not empowered to do."). Nevertheless, the claims are briefly discussed below as they also fail on the merits.

In **claim one**, the petitioner asserts that his Fourth Amendment rights were violated by the trial court who denied his motion to suppress evidence obtained as a result of an unlawful search and seizure. (DE#1:5). According to the petitioner, the arresting officers lacked reasonable suspicion to justify an encounter, mcuh less sufficient probable cause to initiate an investigatory detention of the petitioner. (DE#1:5a). The petitioner maintains that Mario's statement that he had observed the petitioner carrying a gun was not legally sufficient to warrant the petitioner's detention. (Id.).

---

Alabama, 577 F.2d 1188, 1192 (5 Cir. 1978))(footnote omitted). Thus, the deciding factor in the applicability of the Stone v. Powell principle to a particular case is the existence of state processes affording an opportunity for full and fair litigation of Fourth Amendment claims, rather than a defendant's utilization of those processes. Id. at 1193.

[12]Terry v. Ohio, 392 U.S. 1 (1968).

It is well-settled that police/citizen encounters fall within one of three categories: (1) consensual encounters where an officer elicits a citizen's voluntary cooperation which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion that a person has committed or is committing a crime, the "Terry" stop; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause. See U.S. v. Santibanez Garcia, 132 F.Supp.2d 1338, 1341-45 (M.D.Fla. 2000) and cases cited therein. See also United States v. Espinosa-Guerra, 805 F.2d 1502, 1506 (11 Cir.1986) (identifying investigative stops and full scale arrests among tiers of police-citizen encounters which implicate the Fourth Amendment). The law in Florida is the same. See Popple v. State, 626 So.2d 185, 186 (Fla. 1993)(identifying and defining the three levels of police-citizen encounters).

On the facts of this case, no constitutional violation occurred. Even if the subject encounter could not be deemed a consensual encounter which does not implicate the Fourth Amendment, when considering the totality of the circumstances as it appeared to the investigating officer at the time of the stop, the officers had sufficient facts available to give rise to a reasonable suspicion that the petitioner, who matched the description provided by Mario, a store clerk, had been engaged in criminal activity, justifying an investigative stop under Terry. In the present case, there was a known burglary of a convenience store in the immediate vicinity of where the petitioner was stopped.  The petitioner was found with rolls of coins and clothing matching the person seen on the surveillance videotape. Once the petitioner was stopped and the officers observed a firearm protruding from the petitioner's waistband, they had probable cause to effectuate the arrest. Under these circumstances, the state court's rejection of this claim was

16

in accordance with federal constitutional principles and should not be disturbed here. Williams v. Taylor, supra.

In **claim two**, the petitioner asserts that his Fourth Amendment rights were violated when the trial court denied his motion to suppress physical evidence obtained as a result of an unlawful stop and subsequent search. (DE#1:5). According to the petitioner, the officers did not have a reasonable suspicion to detain and search him because it was based on an unreliable witness who claims to have observed the petitioner with a gun.

As will be recalled, Mario, a store clerk at a convenience store, advised officers that he had observed the petitioner carrying a firearm. At the suppression proceedings, the officers testified that they were familiar with the area and that Mario was well-known to them. Under the totality of the circumstances present here, the officer had a sufficient basis to briefly detain the petitioner based on Mario's statement. See State v. Evans, 692 So.2d 216 (Fla. 4 DCA 1997); see also, Alabama v. White, 496 U.S. 325 (1990). The petitioner has not demonstrated that Mario was unreliable. Under these circumstances, the state court's rejection of the claim on direct appeal was not contrary to nor an unreasonable application of federal constitutional principles and therefore it should not be disturbed here. Williams v. Taylor, supra.

## Trial Court Error Claims

In **claim three**, the petitioner asserts that his due process right to a fair trial was compromised and the trial court erred in failing to grant a mistrial based on the unlawful comment made by a prosecution witness. (DE#1:6). Specifically, the petitioner claims that Officer Shields' testimony that "due to the violent

nature of the call he [petitioner] was suspected to have a firearm"
was prejudicial hearsay testimony, which would enable the jury to
infer that a non-testifying witness had observed the petitioner
behave in a violent manner that involved a firearm. (<u>Id</u>.; Cv-
DE#11:Ex.12).

It should first be noted that this claim is not cognizable in
this federal habeas corpus proceeding. As a general rule, a federal
court in a habeas corpus case will not review the trial court's
actions concerning the admissibility of evidence since the state
court has wide discretion in determining whether to admit evidence
at trial. <u>See Alderman v. Zant</u>, 22 F.3d 1541, 1555 (11 Cir. 1994).
<u>See also</u> <u>Baxter v. Thomas</u>, 45 F.3d 1501, 1509 (11 Cir.
1985)(federal habeas corpus is not vehicle to correct evidentiary
rulings). Only where evidentiary rulings of the state court deny a
petitioner of his fundamental constitutional protections will
federal courts grant habeas corpus relief. <u>Sims v. Singletary</u>, 155
F.3d 1312 (11 Cir. 1998)(denying habeas corpus relief on a claim
that a motion for mistrial was wrongfully denied). <u>See also</u> <u>Estelle
v. McGuire</u>, 502 U.S. 62 (1991); <u>Osborne v. Wainwright</u>, 720 F.2d
1237, 1238 (11 Cir. 1983); <u>Jameson v. Wainwright</u>, 719 F.2d 1125 (11
Cir. 1983); <u>DeBenedictus v. Wainwright</u>, 674 F.2d 841, 843 (11 Cir.
1982). Moreover, such evidentiary rulings are subject to the
harmless error analysis and will support habeas relief only if the
error "had substantial and injurious effect or influence in
determining the jury's verdict." <u>Sims v. Singletary</u>, 155 F.3d at
1312, <u>quoting</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993). Such
was not the case here.

Second, even if the witness' comment were prejudicial, it was
cured by the court's curative instruction, striking the witness'

statement, and instructing the jury to disregard it.[13] (T.357-361). Under these circumstances, the petitioner has failed to demonstrate that the comment, when viewed in context, was so highly prejudicial that it rendered the trial fundamentally unfair. See Payne v. Tennessee, 501 U.S. 808 (1991). In other words, the petitioner has failed to establish that but for this comment, the jury would not have convicted him of the offenses. Likewise, under Florida law, where a comment is isolated, brief, and not repeated in the remaining testimony or closing, "the error has been considered harmless and deemed insufficient to provide a basis for reversal on appeal." Johnson v. State, 670 So.2d 1121, 1123 (Fla. 5 DCA 1996); Goodwin v. State, 721 So.2d 728, 728-729 (Fla. 4 DCA 1998)(single comment not unduly prejudicial where curative instruction given). Under these circumstances, the trial court's denial of the claim is not an unreasonable application of federal constitutional principles and should not be disturbed here. Williams v. Taylor, supra.

In **claim four**, the petitioner asserts that the court violated his constitutional rights when it allowed a police officer to identify the clothing seen on a surveillance video as that belonging to the petitioner. (DE#1:6). According to the petitioner, it was error to permit Officer Shields to testify regarding the clothing the petitioner was wearing at the time of the convenience store robbery, as scene on the surveillance videotape, because the officer was not an eyewitness to the incident. (Id.).

First, it should be noted that the petitioner himself conceded that it was he on the surveillance tape, and that the clothing he was wearing at that time also belonged to him. (T.435).

---

[13]Notwithstanding, the record reveals that Eldick, the store owner, testified that the store window was shattered, the cash register broken open, and was lying on the floor, with money strewn around it, thus depicting a violent burglary. (T.318-325).

Petitioner's defense at trial was never that he did not commit the offenses, but rather that he was voluntarily intoxicated at the time of the offenses. Moreover, as will be recalled, Officer Shields did not identify the petitioner as the individual on the videotape, but rather was able to identify the clothing as matching that worn by the petitioner at the time of his arrest. (T.363,372). Under the circumstances present here, no showing has been made that the officer's testimony was inadmissible hearsay under Florida law, and even if so, its admission was at best harmless error. See Edwards v. State, 712 So.2d 407, 408 (Fla. 5 DCA 1998)(holding that erroneous admission of police officer's testimony, who was not eyewitness to crime, and who identified the defendant in videotape was harmless where undercover agents involved in transaction identified defendant, making testimony cumulative). In this case, as in Edwards, the officer's testimony was cumulative to that of the petitioner, who acknowledged it was him on the videotape. Under the totality of the circumstances present here, no due process violation has been proven and the state court's rejection of the claim should therefore not be disturbed here. Williams v. Taylor, supra.

## Ineffective Assistance of Counsel Claims

In **claim five**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer, who was diagnosed with a bipolar disorder and undergoing medical care and treatment at the time of the petitioner's trial, failed to properly pursue an voluntary intoxication defense at trial. (DE#1:14). The petitioner concedes that this claim is unexhausted as it was never raised in the state forum. (DE#1:14).

It is well established in Florida that claims that could have, and should have, been raised on direct appeal are procedurally

barred from collateral review. The failure of a federal habeas petitioner to adhere to state procedural rules governing the proper presentation of claims will bar federal review of those claims in a subsequent federal habeas corpus proceeding. See Wainwright v. Sykes, 433 U.S. 72 (1977); Sims v. Singletary, 155 F.3d 1297, 1311 (11 Cir. 1998). The federal habeas court must defer to the state court's interpretation of its procedural rules, and must enforce those rules as well as enforcing the procedural rulings of the state courts. See Lindsey v. Smith, 820 F.2d 1137 (11 Cir. 1989). See also Agan v. Vaughn, 119 F.3d 1538, 1549 (11 Cir.1997)(holding that "state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.") Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the court issues only a one-sentence denial of relief. Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. See Coleman v. Thompson, 501 U.S. 722, 735-36, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Kight v. Singletary, 50 F.3d 1539, 1544-1545 (11 Cir. 1995)(applying procedural bar where state court's summary dismissal did not explain basis for ruling); Tower v. Phillips, 7 F.3d 206, 209 (11 Cir. 1993)(applying bar where state court did not rule on claims presented).

   "[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the district court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Kelley v. Secretary for Dept. of Corr., 377 F.3d 1317, 1351 (11 Cir. 2004)(internal quotation marks omitted). The federal court must apply a procedural bar to the claims that either have been explicitly ruled procedurally barred by the highest state court considering the claims, Harris v. Reed, 489 U.S. 255 (1989), or are not exhausted but would clearly

be barred if returned to state court. <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n. 1 (1991).   Thus, the claim is unexhausted and procedurally barred from review here.

To overcome a bar, the petitioner must establish either cause and prejudice or a fundamental miscarriage of justice exception to justify its review. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 848-49 (1999); <u>see also</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 750-51 (1991). No such showing has been made here.

Alternatively, to the extent the petitioner means to argue that counsel failed to investigate the petitioner's mental competency in order to establish an insanity defense, that claim also warrants no federal habeas relief.

Pursuant to <u>Pate v. Robinson</u>, 383 U.S. 375 (1966), this argument is also meritless. A court is required <u>sua sponte</u> to hold a competency hearing whenever there is substantial doubt concerning the defendant's competence. <u>Pate v. Robinson</u>, 383 U.S. 375 (1966). The factors giving rise to a trial court's obligation to hold a competency hearing are:  1) prior evidence of the defendant's irrational behavior; 2) the defendant's demeanor at trial; and 3) prior medical opinions regarding the defendant's competence to stand trial. <u>Dusky v. United States</u>, 362 U.S. 402 (1960); <u>Sheley v. Singletary</u>, 955 F.2d 1434, 1438 (11 Cir. 1992); <u>Reese v. Wainwright</u>, 600 F.2d 1085, 1091 (5 Cir.), <u>cert.</u> <u>denied</u>, 444 U.S. 983 (1979).

There are no "fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed," <u>Drope</u>, <u>supra</u>, but at a minimum the defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and must have a

"rational as well as a factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402 (1960).  The presence of some degree of mental disorder in the defendant does not necessarily mean that he is incompetent to knowingly and voluntarily enter a plea as well as aid and assist in his own defense.  Wolf v. United States, 430 F.2d 443, 444 (10 Cir. 1970).

In this case, the court had no *sua sponte* duty to hold a pre-trial competency hearing under Pate as the record does not support the need for competency proceedings. Thus, the petitioner has fallen far short of establishing that he was incompetent at the time of trial.

If he means to argue that counsel was ineffective for failing to pursue an insanity defense, that claim fails on the merits. It is first noted that the petitioner's assertion that he had a viable defense of insanity is wholly conclusory, without any substantiation whatever in the record except for his own self-serving allegations in this federal proceeding and in the state Rule 3.850 proceeding that he was insane at the time of the offenses. The petitioner has not supported his claim with affidavit(s) from mental health experts, medical evidence of insanity or any other documentary evidence that he suffers from some mental defect or disease. He is, therefore, not entitled to relief on his claim of ineffective assistance of counsel on this basis alone.[14]

_____

[14]Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative value.  Ross v. Estelle, 694 F.2d 1008, 1011-12 (5 Cir. 1983).  See also, e.g., Panuccio v. Kelly, 927 F.2d 106, 109 (2 Cir. 1991)(a defendant's testimony after the fact suffers from obvious credibility problems). Moreover, bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir. 1979); King v. United States, 565 F.2d 356 (5 Cir. 1978); Clayton v. Estelle, 541 F.2d 486 (5 Cir. 1976).

More important, contrary to petitioner's assertion, it is evident from the record that an investigation into the issue of the petitioner's sanity at the time of the commission of the crimes was in fact conducted. As explained by the prosecution, when the issue arose prior to trial, an evaluation was conducted which found the petitioner competent. (T.275-78). In fact, two evaluations were conducted which showed that the petitioner was a "malingerer who faked mental illness." (T.284-89). Prior to trial in May of 1999, Dr. Brannon also evaluated the petitioner and opined that there was no evidence to support either a mental illness defense or a voluntary intoxication defense associated with the crime. (T.291-293,295).

The claim that the petitioner had a viable insanity defense is thus refuted by the record. Insanity is a complete defense to the crime with which the petitioner was charged. See Reaves v. State, 826 So.2d 932, 938-39 (Fla. 2002); Childers v. State, 782 So.2d 513, 517 (Fla. 1 DCA 2001), quoting, 15 Fla.Jur.2d, Criminal Law §3059 at 575 (1993)("A person who is insane is incapable of forming the intent necessary to commit a crime, and such an individual cannot be legally punished for acts which would be criminal if he were not insane"). However, the petitioner did not qualify as legally insane pursuant to the applicable standard as revealed by the evidence admitted at trial. The standard in Florida for insanity is the McNaughton Rule, which considers 1) the individual's ability at the time of the incident to distinguish right from wrong, and 2) his ability to understand the wrongness of the act committed. See Gurganus v. State, 451 So.2d 817, 820 (Fla. 1984). See also Reynolds v. State, 837 So.2d 1044, 1048(Fla. 4 DCA 2002). Thus, under McNaughton, if a defendant suffers from some mental infirmity, defect, or disease, but nevertheless understands the nature and consequences of his actions and that his actions are against the law, his actions are punishable. Wallace v. State, 766

So.2d 364, 368 (Fla. 3 DCA 2000).

The facts of this case refute a defense of insanity. The testimony at trial, including that of the petitioner, revealed that the petitioner was high on drugs and alcohol, but that he had been searching that evening to steal money so he could maintain his drug habit. The videotape from the store surveillance camera also is inconsistent with an insanity defense.

Thus, the record demonstrates that counsel did investigate the subject issue and that no evidence favorable to the defense was apparently revealed. Moreover, the evidence presented at trial indicates that the petitioner was aware of what he was doing, knew the nature and consequences of his actions, and was clearly able to distinguish right from wrong, even if he does suffer from some sort of mental infirmity, defect or disease, as he now alleges. Thus, any attempt by the petitioner to demonstrate that he was legally insane at the time of the offenses would not have been successful under Florida law. See Wallace v. State, 766 So.2d at 368.

From review of the petitioner's pleadings, it appears that he might also now be claiming that his insanity was caused by crack cocaine and alcohol intoxication. In Florida, "the law recognizes insanity super-induced by the long and continued use of intoxicants so as to produce 'a fixed and settled frenzy or insanity either permanent or intermittent.'" Cirack v. State, 201 So.2d 706, 709 (Fla. 1967) and cases cited therein. As interpreted by the Florida courts, the Cirack test contemplates a mental disease or disorder which manifests itself intermittently or permanently irrespective of consumption of alcohol. State By and Through Office of State Attorney for Twentieth Judicial Circuit v. McNally, 336 So.2d 713, 715 (Fla. 2 DCA 1976). The court noted in McNally that evidence of long-term substance abuse alone does not prove insanity, and that

otherwise any individual diagnosed as an alcoholic would be able to assert the defense of insanity on that basis alone. <u>Id</u>. Thus, in this case, voluntary intoxication alone could not be the basis for an insanity defense. <u>See</u> <u>Cirack v. State</u>, <u>supra</u>. For the reasons expressed above, counsel's performance was not constitutionally ineffective for failing to pursue this claim.

Under these circumstances, to the extent the state court rejected this claim, it does not appear that the rejection was in conflict with clearly established federal law or based on an unreasonable determination of the facts, and thus it should not be disturbed here.[15] 28 U.S.C. §2254(d)(1); <u>Williams v. Taylor</u>, <u>supra</u>.

Moreover, the state court's conclusion regarding the petitioner's competency is a factual determination which is entitled to the presumption of correctness on federal review. <u>See</u> <u>Demosthenes v. Baal</u>, 495 U.S. 731, 735 (1990). Consequently, the petitioner is entitled to no relief on this claim.

In **claim six**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer permitted that the petitioner appear in shackles during trial and recess, which was observed by three jurors. (DE#1:16).

Both federal and Florida law provides that, as a general rule, a defendant in a criminal trial has the right to appear before the jury free from physical restraints, such as shackles or leg and waist restraints. <u>Bryant v. State</u>, 785 So.2d 422, 428 (Fla. 2001); <u>Illinois v. Allen</u>, 397 U.S. 337, 334 (1970). Restraining a

---

[15]The appellate court's decision without written opinion affirming the denial of postconviction relief is entitled to deference under the AEDPA for purposes of subsequent federal habeas corpus review. <u>Wright v. Secretary for Dept. of Corrections</u>,278 F.3d 1245 (11 Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).

defendant with shackles in view of the jury adversely impacts an
accused's presumption of innocence. See Bryant v. State, supra,
citing, Diaz v. State, 513 So.2d 1045, 1047 (Fla. 1987); Elledge v.
State, 408 So.2d 1021, 1022 (Fla. 1981). However, a criminal
defendant's right be free of physical restraints is not absolute:
"[U]nder some circumstances, shackling 'is necessary for the safe,
reasonable, and orderly progress of trial.'" United States v.
Mayes, 158 F.3d 1215, 1225 (11th Cir. 1998), quoting, United States
v. Theriault, 531 F.2d 281, 284 (5th Cir. 1976). "Courtroom security
is a competing interest that may, at times, 'outweigh[ ] a
defendant's right to stand before the jury untainted by physical
reminders of his status as an accused.'" Mayes, 158 F.3d at 1225,
quoting, Allen v. Montgomery, 728 F.2d 1409, 1413 (11th Cir. 1984).
Florida courts have held that shackling is a permissible tool to be
exercised in the sound discretion of the trial judge when
circumstances involving the security and safety of the proceeding
warrant it. See Derrick v. State, 581 So.2d 31, 35 (Fla. 1991);
Correll v. Dugger, 558 So.2d 422 (Fla. 1990); Stewart v. State, 549
So.2d 171 (Fla. 1989). "Shackles may be necessary to prevent the
defendant from disrupting the trial ... and to protect the physical
well-being of the jury, lawyers, judge, and other trial
participants." Zygadlo v. Wainwright, 720 F.2d 1221, 1223 (11th Cir.
1983).

     Moreover, if the jury cannot see the defendant's shackles,
there can be no prejudice. United States v. Mayes, 158 F.3d 1215,
1226-27 (11th Cir. 1998)("The restraints in this case were not
capable of affecting the jury's attitude in any way because the
district court took great care to ensure that the jury never saw
the appellants were wearing leg irons."); United States v. Brazel,
102 F.3d 1120, 1158 (11th Cir. 1997)("Defendants, moreover, have not
shown a realistic likelihood at they were prejudiced by what was
done, the shackles having been screened from view."). Even if the

jury could see the shackles, federal courts have held that a defendant is not necessarily prejudiced by a brief or incidental viewing by the jury of the defendant in handcuffs. <u>United States v. Markovic</u>, 911 F.2d 613 (11th Cir. 1990); <u>Gates v. Zant</u>, 863 F.2d 1492 (11 Cir. 1989); <u>Allen v. Montgomery</u>, 728 F.2d 1409, 1414 (11th Cir. 1984) (well established rule is that "a brief and fortuitous encounter of the defendant in handcuffs is not prejudicial and requires an affirmative showing of prejudice by the defendant"); <u>United States v. Diecidue</u>, 603 F.2d 535, 549-50 (5th Cir. 1979).

The substantive issue underlying this ineffective assistance of counsel claim was raised by the petitioner in his motion for new trial. There, the petitioner argued that he had put his feet outside the covered table area and that at least one juror saw that his feet were shackled. (DE#11:Ex.8). At the hearing on the motion, petitioner explained that an ankle scar hurt during trial, so when he bent down to pick up a candy wrapper he had dropped, he got a cramp and started rubbing his ankle. (DE#11:Ex.9:16-17). At that point, the petitioner alleges that his leg was out from under the table, and a juror observing this put his hand on his cheek, and looked up towards the ceiling. (<u>Id</u>.:19-20). After a recess, the petitioner claims two other jurors also looked towards his feet. (<u>Id</u>.). The petitioner testified that he advised his attorney of this fact at the end of the day, or before jury deliberations, but did not inform the judge, bailiff, or the prosecution of the incident. (<u>Id</u>.:22,24-25). In denying the motion to have the jurors interviewed, the court concluded that the petitioner had waived the issue by not making a timely objection. (<u>Id</u>.:26).

Assuming that the petitioner timely advised counsel of the incident, and further assuming that counsel was deficient for failing to lodge a timely objection, in this case, the petitioner invited the error by exposing his legs from underneath the table

during trial. Even if the petitioner did not invite the error, the petitioner is still not entitled to relief because he cannot satisfy the prejudice prong of <u>Strickland</u>. As previously noted, federal courts have also held that a defendant is not necessarily prejudiced by a brief or incidental viewing by the jury of the defendant in shackles. <u>United States v. Pina</u>, 844 F.2d 1, 8 (1st Cir. 1988) (brief exposure of defendant in shackles to three jurors not inherently prejudicial); <u>United States v. Markovic</u>, 911 F.2d 613 (11th Cir. 1990). In this case, as asserted correctly by the state, no showing has been made that the petitioner was prejudiced by the juror's brief viewing of the petitioner in shackles. Thus, the rejection by the state collateral courts was in accord with applicable federal authority, and the same result should pertain here.[16] <u>Williams v. Taylor</u>, supra.

In **claim seven,** the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to object or seek to exclude highly prejudicial statements and evidence. (DE#18:4). According to the petitioner, his testimony at trial, coupled with counsel's opening statements[17] (T.301-306) regarding the petitioner's criminal history, and testimony regarding his identification was highly prejudicial, because it proved that the petitioner had a propensity to commit the offenses.

The evidence at trial did not prove, as alleged by the petitioner, that he had a propensity to commit the crimes. On the

---

[16]It should briefly be noted that the claim also appears to have been unexhausted because while raised as an ineffective claim in one of his Rule 3.850 motions, those claims were dropped by the petitioner when he was represented by counsel. Review of the record reveals that he agreed with counsel's advice to only proceed on two unrelated claims. Consequently, the state courts has not had an opportunity to rule on this claim and the petitioner is now precluded from returning to the state forum to exhaust the issue.

[17]Counsel explained the petitioner's history of abuse by his father, his mental illness and treatment, and his chronic alcohol and drug abuse, which resulted in numerous blackouts. (T.297-306).

contrary, counsel's comments, and the petitioner's testimony establish the petitioner's history of extensive drug and alcohol abuse. In fact, the testimony was proper to help support the voluntary intoxication defense and to negate that the petitioner had the requisite intent to commit the offenses on the night of the burglary. Moreover, when petitioner elected to testify on his own behalf, he was aware that he would be subject to cross-examination regarding his prior five felonies and two prior crimes involving dishonesty. (T.392-394).

Under the circumstances present here, the petitioner has failed to establish either deficient performance or prejudice arising from counsel's alleged statements or from his failure to pursue a timely objection regarding the alleged prejudicial testimony. To the extent the petitioner appears to argue that counsel should have objected to the officer's identification of the clothing on the videotape as that belonging to the petitioner, this claim is a mere reiteration of arguments previously raised in this habeas petition and should be denied for the reasons expressed therein. Consequently, the petitioner is entitled to no relief on this claim.

In **claim eight,** the petitioner asserts that he was denied effective assistance of counsel, where his lawyer allowed the petitioner to make prejudicial statements and permitted the jury to see him in shackles. (DE#18:5). According to the petitioner, counsel allowed him to make prejudicial statements regarding the fact that he was incarcerated at the time of trial. (Id.). He faults counsel for failing to object to the movant's own testimony in this regard in order to preserve the issue for appellate review. (Id.).

First, the petitioner has not provided any objective evidence

in the state forum nor in his habeas proceeding that the petitioner testified that he was in jail during trial. Such a conclusory allegation is subject to summary dismissal. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962). To the extent he reiterates arguments previously raised in relation to claims six and seven above, this claim should be denied for the reasons previously expressed therein.

In conclusion, it is clear from the record when viewed as a whole that the petitioner received able representation more than adequate under the Sixth Amendment standard. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Lastly, to the extent the petitioner appears to argue that he is entitled to a federal evidentiary hearing on his claims, that claim also warrants no habeas corpus relief here. If a habeas corpus petitioner "alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of the claim." <u>Holmes v. United States</u>, 876 F.2d 1545, 1552 (11 Cir. 1989), <u>quoting</u> <u>Slicker v. Wainwright</u>, 809 F.2d 768, 770 (11 Cir. 1987). However, no hearing is required where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous. <u>Holmes</u>, <u>supra</u> at 1553. Here, for the reasons which have been discussed, the petitioner's claims are all affirmatively contradicted by the existing record, so no federal hearing is necessary or warranted.

## Conclusion

For the foregoing reasons, it is recommended that this petition for habeas corpus relief be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 24th day of July, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Bruce Thompson, <u>Pro Se</u>
     DC#773246
     Dade Correctional Institution
     19000 SW 377th Street
     Ste. #300
     Florida City, FL 33034

     Diane F. Medley, Ass't Atty Gen'l
     Office of the Attorney General
     1515 North Flagler Drive, #900
     West Palm Beach, FL 33401-3428