UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-61520-CIV-SEITZ/WHITE

BRUCE THOMPSON,

        Petitioner,

v.

WALTER MCNEIL,

        Respondent.
_____/

### ORDER DENYING PETITION FOR HABEAS CORPUS

THIS MATTER is before the Court upon the Corrected Report and Recommendation [DE-29] ("R&R") of the Magistrate Judge.[1] The R&R recommends denying on various grounds Petitioner Bruce Thompson's ("Thompson's") petition for a writ of habeas corpus pursuant 28 U.S.C. § 2254, which challenges the constitutionally of his convictions for burglary of a structure while armed and grand theft on various grounds. Thompson has timely filed a set objections, addressing the Magistrate Judge's disposition of each of Thompson's eight claims.[2] Having reviewed *de novo* the R&R, Petitioner's objections, Petitioner's Motion To Supplement [DE-39][3],

---

[1] The Magistrate Judge issued the Corrected R&R a day after entering an initial R&R [DE-28] because the initial R&R was sent to the wrong prisoner.

[2] Petitioner "generally accepts the Magistrate's report concerning the procedural history in this case, as well as the facts adduced at trial, and the law governing review of the instant Petition for Writ of Habeas Corpus." (DE-32, Objections To Report and page 1). Therefore, the Court concludes that Petitioner does not object to the Magistrate Judge's factual findings.

[3] This Motion is granted and the Court has considered Petitioner's supplemental filing in resolving his Petition.

the complete record and pertinent legal authorities, the Court will dismiss the Petition.[4]

## 1. Fourth Amendment Claims

The Magistrate Judge recommends dismissing Thompson's two claims under the Fourth Amendment because (1) Thompson has had an opportunity to fully and fairly litigate those claims in state court, and (2) both claims fail on the merits because the trial court properly denied his motions to suppress evidence. Thompson objects that the Magistrate Judge (1) incorrectly concluded that state courts afforded Thompson a full and fair opportunity to litigate and (2) made incorrect factual findings and legal conclusions with respect to the merits of Thompson's Fourth Amendment claims.

### a. Opportunity For Full And Fair Litigation

Upon review of the state record, the Magistrate Judge found that Thompson had an opportunity to fully and fairly litigate his Fourth Amendment claims in state court such that he is precluded under *Stone v. Powell*, 428 U.S. 465 (1976), from raising those claims in this Habeas Petition. Specifically, the Magistrate Judge found that Thompson's trial counsel filed a written motion to suppress evidence seized as the result of an exploratory search, and that the trial court held evidentiary proceedings in which it heard testimony and argument from counsel before denying the motion. Thompson's counsel then raised the claim before the state appellate court on direct appeal

---

[4] The Court will also deny Petitioner's Motion To Appoint Counsel [DE-39]. "A plaintiff in a civil case does not have a constitutional right to counsel, and the court should only appoint counsel in exceptional circumstances." *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). Petitioner was able to file his briefs and objections to the R&R without the benefit of counsel and has not made a showing that this relatively straightforward Habeas Petition requires the appointment of counsel. *See Anderson v. Georgia State Pardons and Parole Bd.*, 165 Fed. Appx. 726 (11th Cir. 2006) (motion to appoint counsel properly denied where the legal issues involved in a civil rights action were "not so novel or complex as to require counsel" and plaintiff's conduct "demonstrated his familiarity with the law and the ability to present his argument"). While Petitioner claims that he has a mental illness preventing him from "coherently" representing himself, his own *pro se* filings dispute his argument that he cannot coherently raise claims in support of his Petition without an attorney's assistance.

and the appellate court issued an order summarily affirming the rulings of the trial court. (DE-11, A.12 through A.15). Thompson does not object to the Magistrate Judge's factual findings. However, he argues that the Magistrate Judge improperly held that the *Stone* "full and fair litigation" bars his Fourth Amendment claims in this habeas petition because (1) Respondent did not raise the defense in its brief, thereby waiving the defense, and (2) Thompson did not have "meaningful appellate review" because the appellate court "did not make any findings of fact with regard to [P]etitioner's [F]ourth [A]mendment claims."

First, while Thompson correctly points out that Respondent did not raise the *Stone* issue in its response brief, the Magistrate Judge properly considered the defense *sua sponte*. While courts have differed as to whether a district court is obligated to consider the defense *sua sponte*, *compare Wallace v. Duckworth*, 778 F.2d 1215, 1219-20 n.1 (*Stone* is not a jurisdictional rule that the court must raise *sua sponte*), *with Woolery v. Arave*, 8 F.3d 1325, 1327 (9th Cir. 1993) (district court "is oblige[d] ... to raise the issue *sua sponte* if the state neglects to assert it"), *and Davis v. Blackburn*, 803 F.2d 1371, 1373 (5th Cir. 1986) (district court "is not foreclosed from *sua sponte* applying" *Stone* defense), no authority indicates that a district court *cannot* consider the defense *sua sponte*. Moreover, in the Eleventh Circuit, "the burden [is on] the petitioner to plead and prove ... a want of opportunity fairly and fully to litigate any fourth amendment claim in state courts," *Caver v. State of Alabama*, 537 F.2d 1333 (5th Cir. 1976)[5]; *see also People v. Campbell*, 377 F.3d 1208, 1224 (11th Cir. 2004) ("[plaintiff] must demonstrate that the state courts deprived him of a full and fair opportunity to litigate" before court can address merits of Fourth Amendment claim), such that it is

---

[5] Under *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as precedent all decisions of the Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

appropriate for a court to address *Stone sua sponte* when it is not addressed by the petitioner. Accordingly, the Magistrate Judge properly considered *sua sponte* the issue of whether Petitioner was given a full and fair opportunity to litigate his Fourth Amendment claims in the state court.

However, the Court finds that, under Eleventh Circuit Court of Appeals precedent, *Stone* does not preclude Thompson from raising his Fourth Amendment claims in this habeas proceeding because the trial court did not make explicit factual findings and the state appellate court summarily affirmed the trial court. When a trial court fails "to make explicit [factual] findings on matters essential to the Fourth Amendment issue" and "the state appellate court issue[s] only a summary affirmance," the state has not provided full and fair consideration. *Tukes v. Dugger*, 911 F.2d 508, 514 (11th Cir. 1990) (*Stone* does not apply when trial court holds evidentiary hearing, but does not make explicit findings of fact, and appellate court summarily affirms); *see also Hearn v. Florida*, 326 Fed. Appx. 519, 522 (11th Cir. 2009) ("A state does not afford a defendant a full and fair opportunity to litigate the validity of a search under the Fourth Amendment when the state courts fail to make essential findings of fact").

Here, while the trial court held an evidentiary hearing on Thompson's motions to suppress, it made *no* findings of fact and, in denying Thompson's motions, simply stated that law enforcement had the requisite reasonable suspicion and probable cause.[6] When combined with the state appellate

---

[6] The trial court's entire disposition of the suppression issue was as follows:

The Court finds by a preponderance of the evidence, based on the evidence presented, that the officer, Officer Hill, had a right under both Florida Statute 901.15(2) and 901.151(2) to stop the Defendant. Under 901.15, the Court finds that Officer Hill had probable cause to believe that a felony had been committed and that the Defendant was the person who committed the felony. Under 901.151, certainly Officer Hill encountered the Defendant under circumstances which Officer Hill reasonably indicated to Officer Hill that the Defendant had committed, was committing or was about to commit a violation with the law. So, under either statute I think the officer was justified in the stop and the seizure.... So, as to the motion to suppress physical evidence, that will be denied....

court's summary affirmance, the Court finds that, under Eleventh Circuit case law, Thompson was not given a full and fair opportunity to litigate his Fourth Amendment claims.[7] Accordingly, the Court will reject the recommendation that *Stone v. Powell* precludes Thompson from raising his Fourth Amendment claims in this federal Habeas Petition.

### b.   Merits

Turning to the merits, Thompson's Fourth Amendment claims arise from the trial court's denial of his motion to suppress evidence implicating his commission of the robbery of a Kwik Stop convenience store. Thompson claims that (1) law enforcement did not have reasonable suspicion of criminal activity based solely on the tip of a clerk at another nearby convenience store that he possessed a firearm, and (2) relatedly, even if the tip could establish reasonable suspicion under certain circumstances, it was not sufficiently reliable in Petitioner's case to establish reasonable suspicion.

### 1)   Reasonable Suspicion (Claim One)

With respect to Thompson's first claim, the Magistrate Judge found the investigating officers had sufficient facts available to give rise to a reasonable suspicion that Thompson had been engaged in criminal activity because a Four Corners Convenience Store clerk named "Mario" pointed to Thompson on the street and identified Thompson as the man who was waving around a firearm in Mario's store. (DE-11, A.4, Trial Court Proceedings at 253-54, 261). The Magistrate Judge also found that law enforcement had probable cause to later arrest Thompson for the Kwik Stop robbery

---

(DE-11, A.4, Trial Court Proceedings at 283 and 284).

[7] This is not to say that a summary affirmance automatically precludes *Stone* from applying. *See, e.g., Rainey v. Thigpen*, 1993 U.S. Dist. LEXIS 17325, at *6 (N.D. Ala. Apr. 6, 1993) ("a question about the fullness and fairness of consideration is raised only when the state trial court makes no explicit findings of fact *and* there is no appellate opinion dealing with the Fourth Amendment claims") (emphasis in original).

because the robbery took place in the immediate vicinity of where law enforcement stopped Thompson, Thompson was stopped with rolls of coins and a gun in his waistband, and Thompson was wearing clothing matching the clothing of the robber seen on a surveillance tape taken from the Kwik Stop.

Thompson argues that law enforcement did not have reasonable suspicion to stop him because Mario's "tip" that Thompson was carrying a gun "only described innocent details" about Thompson's conduct since it is not a crime in Florida to carry a licensed concealed firearm.[8] However, Thompson fails to acknowledge that Florida punishes the unlicenced possession of a firearm as a third-degree felony. Fla. Stat. § 790.01.[9] Moreover, the testimony of Officer Todd Hill, one of the investigating officers, indicates that Mario informed law enforcement that an individual was not just carrying a firearm, but "waving the firearm in his store." (DE-11, Respondent's Exhibits, A.4, Trial Court Proceedings at 261). Accordingly, the Court will adopt the Magistrate Judge's recommendation that the state court did not unreasonably apply federal constitutional principles when it determined that law enforcement had reasonable suspicion, based on a tip from a store clerk that Thompson had waved around a firearm in the store, that Thompson was engaged in criminal activity.

---

[8] Petitioner also argues that the Magistrate Judge improperly relied on events that took place *after* the stop to support his decision that law enforcement had reasonable suspicion of criminal activity. However, this argument misreads the R&R, which says that Mario's tip provided reasonable suspicion to suspect Thompson of criminal activity, and other information (e.g., a stop in proximity to a known burglary, rolls of coins, gun in waistband, clothes matching those of the robbery in the Kwik Stop surveillance video) later gave law enforcement probable cause to make an arrest for the Kwik Stop robbery. (R&R at 16).

[9] Thompson has never claimed that he had a license to carry a firearm and the police arrested Thompson shortly after the stop for carrying a concealed weapon.

6

### 2) Reliability of Tip (Claim Two)

With respect to Petitioner's second claim, concerning the reliability of Mario's tip, the Magistrate Judge found that the officers testified that they were familiar with the area surrounding the Four Corners store and that they knew Mario well. Based on these facts, the Magistrate Judge found that Thompson has not demonstrated that Mario was unreliable.

Thompson objects that Mario's tip was not reliable because it is not a crime to carry a firearm in Florida and no other criminal activity was present. This is not an argument that law enforcement had any reason to question the truthfulness of Mario's statement that Petitioner was brandishing a firearm, thus, Thompson's claim is not truly aimed at the reliability of the information Mario sought to provide. *See Illinois v. Gates*, 462 U.S. 213, 230 (1983) (listing an informant's veracity, reliability and basis of knowledge as the relevant considerations in determining reliability). Moreover, as discussed above, the record indicates that Mario's tip did, in fact, report probable criminal activity because it is a third-degree felony in Florida to carry a concealed firearm without a license. Accordingly, the Court will adopt Judge White's recommendation that the state court did not unreasonably apply federal constitutional principles when it rejected Thompson's claim that Mario's tip was unreliable.

### 2. Trial Court Errors

Thompson also asserts that he was denied the right to a fair trial by two of the trial court's rulings. First, Thompson claims that his right to a fair trial was compromised when the trial court refused to declare a mistrial after one of the responding officers testified that he suspected Thompson had a firearm "due to the violent nature of [Mario's] call." Second, he argues that his right to a fair trial was violated when the trial court allowed a police officer who was not an eyewitness to the

Kwik Stop robbery to testify that clothing worn by the robber in the Kwik Stop surveillance video belonged to Thompson.

### a.     Hearsay Testimony Regarding Informant's Statements (Claim Three)

The Magistrate Judge rejects Thompson's first claim concerning the hearsay testimony about Mario's call to the police because (1) a federal court in a habeas corpus case generally will not review the trial court's decision concerning the admissibility of evidence, and (2) the witness's testimony, even if prejudicial, was harmless because of the trial court's curative instruction that the witness's statement was stricken and the jury was to disregard it.

Thompson does not challenge Judge White's account of the trial court judge's curative instruction, and simply argues that because an officer cannot testify as to the contents of a tip he was deprived of his right to a fair trial under the circumstances of this case. However, Thompson provides no explanation as to how the testimony impacted the outcome of his trial despite the trial court's curative instruction and does not point to any analogous legal authority supporting his claim. Accordingly, the Court will adopt the Magistrate Judge's recommendation that this claim should be denied because the state court did not unreasonably apply federal constitutional principles when it rejected Thompson's claim that a mistrial should have been declared.

### b.     Testimony Concerning Surveillance Video (Claim Four)

The Magistrate Judge recommends denying Petitioner's second claim regarding a police officer's testimony that Thompson owned the clothes worn by the robber in the Kwik Stop video because (1) Thompson conceded at trial that he was on the surveillance tape and the clothing he was wearing in the tape belonged to him, and (2) the testimony was admissible because the officer did not identify Thompson as the individual in the video, but only testified that the clothing matched the

8

clothing Thompson was wearing at the time of his arrest.

Thompson does not object to Judge White's factual findings on this claim. He only points out that prejudicial error occurs when a police officer identifies a defendant in a surveillance video at trial because such testimony creates an impression that the defendant was involved in other criminal activities. However, even if the police officer's testimony was identification testimony[10] and was admitted erroneously in this case, that error was harmless because Thompson admitted he was on the surveillance video and that the clothes he was wearing belonged to him. Accordingly, the Court will adopt Judge White's recommendation that this claim be denied.

### 3. Ineffective Assistance Claims

Finally, Thompson claims that his trial counsel was ineffective in four different ways. First, he argues that his lawyer was incompetent because he was suffering from bipolar disorder and was on psychotropic medications. Second, Thompson claims his counsel was ineffective by permitting Thompson to appear in shackles during trial so that three jurors observed his shackles. Third, he asserts his counsel was ineffective for making statements in his opening argument about Thompson's criminal history and allowing Thompson to testify about that history.[11] Finally, Thompson claims his counsel was ineffective both for allowing Thompson to testify to the jury that he was incarcerated during the trial and for allowing the jury to view him in shackles.

---

[10] The Court does not concede that testimony about the clothes worn by the individual in the video is identification testimony.

[11] Thompson's memorandum of law in support of this claim [DE-19] also alleges that his counsel was ineffective for failing to object to the testimony from an officer that the clothing worn by the robber in the Kwik Stop videotape belonged to Thompson. However, the Court has stated, in addressing Claim Four, why admission of that testimony was harmless even if it was admittedly erroneously.

### a. Voluntary Intoxication Defense (Claim Five)

The Magistrate Judge recommends rejecting Thompson's first claim concerning the incompetence of his counsel because (1) the claim is unexhausted as it was never raised in a state forum and (2) Thompson's argument that he had a viable insanity defense arising from voluntary intoxication is wholly conclusory and is unsupported in his habeas petition by any medical evidence or affidavits from mental health experts.[12]

First, the Court agrees that Petition never argued in the state court either that his counsel was generally incompetent or that he was deprived of the right to counsel. Moreover, Petitioner obviously was provided with counsel at trial and, despite Plaintiff's full litigation of claims concerning his counsel's effectiveness in the state courts, no court has found that his counsel was even ineffective with respect to a particular decision, let alone generally incompetent.

Second, Thompson's objections do not address in any fashion why the state court unreasonably applied federal constitutional principles or made an unreasonable determination of the facts in rejecting his claim that his counsel ineffectively pursued a voluntary intoxication defense. As a result, the Court will adopt the Magistrate Judge's recommendation that this ineffective assistance claim be denied.

### b. Appearance In Shackles (Claim Six)

The Magistrate Judge recommends denying Thompson's claim that his counsel was ineffective for permitting him to appear in shackles because (1) the claim was not exhausted in state

---

[12] Judge White also recommended that, to the extent that Thompson is claiming that he was not competent to stand trial, the record does not indicate that the state trial court should have held pre-trial competency hearings. Thompson's supplemental exhibits [DE-39, 46 through 98] mostly reflect evidence concerning an insanity defense, and the limited evidence speaking toward his competency to stand trial establishes that three competency evaluations were done, one finding Thompson competent and another finding that Thompson was not only competent but that he malingered as to the extent of his mental illness. (DE-39, 76 through 80).

10

court because he dropped the claim after he obtained counsel in post-conviction proceedings, (2) to the extent an error occurred, Thompson invited it by exposing his legs from underneath counsel's table during the trial and (3) Thompson cannot show that he was prejudiced by the jury's brief viewing that he was in shackles.

Thompson objects that (1) he exhausted the claim by raising it in a motion for new trial that was denied on appeal, (2) the record does not demonstrate that he intentionally exposed his shackles to the jury such that he invited the error, and (3) the Magistrate impermissibly placed the burden on Thompson to show that he was prejudiced because the record shows that the trial court did not have adequate justification to place him in shackles. First, while Thompson raised an argument in a motion for a new trial that the trial court should not have allowed the jury to see him shackles, he never asserted in the state court a claim for ineffective assistance of counsel based on his attorney's *failure to object* to his appearance in shackles.[13] As a result, the Court agrees that Thompson did not exhaust this claim in state court.[14] Second, because Thompson is asserting a right to effective counsel, the Magistrate Judge correctly followed *Strickland v. Washington,* 466 U.S. 668 (1994) in placing the burden on Thompson to show he was prejudiced by his counsel's failure to object. As Thompson has not pointed to any record evidence or legal authority to establish prejudice, the Court will adopt the Magistrate Judge's recommendation that this ineffective assistance claim be denied.

---

[13] Moreover, as the R&R's recitation of the trial court's hearing on Thompson's motion for a new trial suggests, Thompson was put on notice of a potential ineffective assistance claim at that hearing, but failed to raise it in post-conviction proceedings. Thompson testified that on the day that jurors saw that he was wearing shackles, he advised his attorney of this fact. However, the trial court denied Thompson's motion for a new trial because his counsel did not make a timely objection. (DE-11, A.9, Hearing On Motion For New Trial at 14 through 26).

[14] Given the Court's determination that Thompson has presented no evidence to show he was prejudiced and that he has not exhausted this ineffective assistance claim, it need not address the Magistrate Judge's finding that Thompson intentionally invited his counsel's error.

### c.  Statements Concerning Criminal History (Claim Seven)

The Magistrate Judge recommends denying Thompson's claim regarding testimony and statements about his criminal history (1) because the evidence at trial did not prove that he had a propensity to commit crimes and (2) Thompson was aware that he could be cross-examined regarding his prior five felonies and two prior crimes involving dishonesty when he elected to testify. In his objections, Thompson only refers the Court back to his memorandum of law supporting this claim [DE-19], which asserts that the admission of the evidence concerning his criminal history prevented him from presenting a voluntary intoxication defense because it impermissibly led the jury to assume he had the requisite intent to commit the crime.

The Court will overrule Thompson's objections because it agrees that the record indicates that the statements in question did not prevent a jury from considering a voluntary intoxication defense. First, his counsel's opening statement, while briefly referencing his prior convictions, consisted almost entirely of a recitation of Thompson's substance abuse history and an explanation of how Thompson's substance abuse was so pervasive that he often committed irrational acts during blackouts. (DE-11, A.4, Trial Court Proceedings at 297-307). Second, Thompson told the trial court that he was aware the State could introduce his prior convictions if he testified, and that he was willing to testify anyway. (DE-11, A.4, Trial Court Proceedings at 393). The Court will adopt the Magistrate Judge's recommendation that this ineffective assistance claim be denied because Thompson has not shown deficient performance or prejudice.

### d.  Statements Concerning Incarceration (Claim Eight)

Finally, the Magistrate Judge recommends denying Thompson's claim concerning statements about his incarceration because he has not provided objective evidence in the state forum or in this

habeas proceeding that he testified that he was in jail during the trial. Upon reviewing the trial court record, the Court agrees and will adopt the Magistrate Judge's recommendation that this ineffective assistance claim be denied.[15] Accordingly, it is hereby

ORDERED THAT

(1) The Magistrate Judge's initial Report and Recommendation [DE-28] is REJECTED because it is moot.

(2) Petitioner's Motion To Appoint Counsel [DE-38] is DENIED.

(3) Petitioner's Motion To Supplement [DE-39] is GRANTED.

(4) The Corrected Report and Recommendation of the Magistrate Judge [DE-29] is AFFIRMED AND ADOPTED IN-PART, and REJECTED IN-PART as discussed above.

(5) The Petition For Habeas Corpus under 28 U.S.C. § 2254 [DE-1] is DENIED.[16]

(6) All pending motions not otherwise ruled upon are DENIED AS MOOT and this case is CLOSED.

DONE and ORDERED in Miami, Florida this 30 day of July, 2010.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record/Pro Se Parties

---

[15] Thompson's duplicative claim concerning the jury's observation of his shackles is addressed in the Court's discussion of Claim Six.

[16] The Court also adopts the Magistrate Judge's recommendation that an evidentiary hearing is not needed to resolve this Petition. Thompson's claims do not rely on a new rule of constitutional law or a factual predicate that was previously undiscoverable through due diligence. *See* 28 U.S.C. § 2254(e)(2). Moreover, a petitioner is not entitled to an evidentiary hearing when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible. *See Campbell*, 377 F.3d at 1237 (quoating *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)).